## OREY *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

[No. 27,201.   Filed March 6, 1939.]

*Shake & Kimmell,* and *Albert J. Fields,* for appellant.

*Gavin & Gavin, Louis W. Dawson,* and *Fredrick L. Allen,* for appellee.

FANSLER, J.—The appellant was the beneficiary of a life insurance policy upon the life of Leo J. Orey, and brought this action to recover double indemnity under

the policy on the theory that the death of the insured resulted from bodily injuries within the terms of the double indemnity clause of the policy. At the conclusion of the plaintiff's evidence the jury returned a verdict for the defendant, pursuant to a peremptory instruction given by the court at the request of the defendant. The plaintiff specified the giving of this instruction as cause for a new trial, and the motion was overruled. The ruling is the basis of the only error assigned.

The double indemnity clause contained in the policy, upon which appellant predicates his right to recovery, is as follows: "The Double Indemnity will be payable upon receipt of due proof that the insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which, except in the case of drowning or asphyxiation, there is evidence by a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days after the date of such injury; provided that the Double Indemnity shall not be payable if death resulted from self-destruction, whether sane or insane, or from military or naval service in time of war, or from any act incident to war, or from engaging in riot or insurrection, or from committing an assault or felony, or from participation in aeronautics, or directly or indirectly from disease or bodily or mental infirmity."

The parties agree that there is a distinction between accidental means and accidental result; that a result different from one expected is not accidental within the meaning of the double indemnity clause if it is the result of voluntary intentional acts upon the part of the insured.

In determining whether a peremptory instruction should be given, it is the duty of the court to consider

only that evidence which is favorable to the party against whom the instruction is asked, and unless all of such evidence, together with all inferences which might reasonably be drawn therefrom is insufficient to support a verdict, the peremptory instruction should not be given.

In order for the plaintiff to recover it was necessary that he prove that Leo J. Orey "died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which . . . there is evidence by a visible contusion or wound on the exterior of the body," and that his death did not result "directly or indirectly from disease or bodily or mental infirmity."

The evidence establishes that the deceased was a strong, muscular, and healthy young man, about twenty-two years of age; that he was employed in driving a lumber truck; that on the morning of December 11, 1928, he was driving his truck loaded with lumber, and when going up a hill on a dirt road the truck for some reason stopped and backed up for some little distance. He was seen in the road around and beside the truck, and then seen going up the road toward the village. He came to the village store, obviously very sick, and announced that he was dying, and was taken to a doctor's office, where it was found that he had a scrotal strangulated hernia. Various witnesses testified that the protrusion was as big as a quart cup, or two fists or a one-half gallon bucket. He was taken to a hospital and died of the hernia. There was evidence that his overalls were torn; that he had clay and dirt on the knees of the overalls; that there were scratches and small wounds on his legs. It was found that there was a rock under one of the rear wheels of the truck, and foot prints in the dirt around the truck. The crank which was usually kept in the cab was found inserted in the front of the

truck in position for cranking. The man who went for the truck found that a ground-wire was loose; that when this was reconnected the truck would start by the electric starter. There was evidence that the deceased had no hernia previous to the occurrences referred to. Three doctors qualified as experts. One of the doctors testified, in answer to a hypothetical question which included all of the material facts, that a hernia such as the one in question "would have to be caused by some extremely violent external means." On cross-examination he said that such a hernia, in his judgment, was caused by a blow, or fall against some object, and that it could not be caused by a strain. The other two experts testified that such a hernia could be caused by some unusual strain or by an external blow. There was testimony that the hernia was discolored and a bluish black. The hernia itself was sufficient to satisfy the requirement that "there is evidence by a visible contusion or wound on the exterior of the body." There is sufficient evidence that the death did not result "directly or indirectly from disease or bodily or mental infirmity." That he died as a direct result of the hernia is established. The first doctor's testimony is to the effect that the hernia was caused solely through external and violent means. Whether it was caused by the engine backfiring while he was cranking the truck, or by a fall, or by some other accidental means, is immaterial to recovery.

The appellee contends that the testimony of the doctor in question was somewhat weakened by cross-examination. But that is a question for the jury. The jury might have accepted the testimony of the other experts to the effect that the hernia might have been caused by a strain, in which event it would seem that there is no evidence that would establish the fact as to how the injury occurred, and as to whether it was the result of a voluntary act or an accident, and no

reasonable basis for an inference one way or another. It is true that where the result must depend on mere conjecture or speculation, the cause should not be submitted to the jury, but here is some evidence that the hernia could be caused only by "violent external means." Under the surrounding circumstances, it might reasonably be inferred that such means were accidental.

The appellee contends that, for the purpose of proving a cause of action, an inference cannot be built upon another inference. It has often been said that there is a rule of law to that effect, but the statements are so interspersed with recognition of exceptions that we must conclude with Professor Wigmore that: "There is no such rule; nor can be." Wigmore on Evidence, 2d Ed., Vol. 1, §41, pp. 258, 259. In an extensive note on the subject in 95 A. L. R., p. 162, it is said on page 182: "It seems clear, after examination of all of the cases which have discussed the question, that there is no such general rule in the sense in which the language itself implies, and that if, in a sense, such a rule may be said to exist, the phraseology used to express it is inaccurate and misleading, and the meaning is quite different than appears upon its face. The courts have apparently often used this phraseology merely as a convenient way of disposing of evidence which it regarded as too remote or uncertain to prove the ultimate facts at issue. The language has become a sort of judicial slogan, used carelessly, inaccurately, and to the confusion of the profession. The statement of the rule in many of the cases, that an inference cannot be based on an inference, shows that what is meant primarily is that an inference cannot be based upon evidence which is uncertain or speculative, or which raises merely a conjecture or possibility." In the instant case, if the testimony of the expert, who said that the hernia could have been caused by violent external means only, is

eliminated, it leaves only the evidence that it might have been caused either by violent external injury, which might be assumed to have been accidental, or by an unusual strain, which might be assumed to have been the result of a voluntary act. The jury might infer that it was one or the other, but a determination without further evidence that it was one rather than the other would depend upon mere speculation or guess, and the trior of facts is not permitted to indulge in such inferences. A fact may sometimes be established by circumstantial evidence more firmly and thoroughly than by direct but conflicting evidence, and when a fact is so established by inference it is as logical and reasonable a basis for further inference as a fact established by direct evidence.

But, under the facts most favorable to the appellant, no necessity is found for basing an inference upon an inference. The only inference necessary, if the jury should believe the evidence to the effect that the injury was caused by violent external means, is that the means were accidental. When the character of the injury is considered, such inference cannot be said to be unreasonable. It was therefore error to take the case from the jury.

Judgment reversed.

Shake, J., having been of counsel, did not participate.
Roll, J., absent.