WESTERN & SOUTHERN LIFE INSURANCE COMPANY
v. KERGER, ADMINISTRATOR

[No. 16,561. Filed October 21, 1941. Rehearing denied March 24, 1942. Transfer denied May 6, 1942.]

*Bomberger, Peters & Morthland,* of Hammond, for appellant.

*William L. Travis* and *Frederick G. Lisius,* both of Hammond (*McAleer, Dorsey, Travis & Young,* of Hammond, of counsel), for appellee.

DeVOSS, P. J.—This is an action brought by John Ciulei on November 5, 1935, to recover on a policy of life insurance issued by appellant on the life of Zaharia Pinta. The policy was for $500.00, with double indemnity for accidental death. Appellee, as administrator of insured's estate, was substituted as plaintiff and filed a second amended complaint. To this second amended complaint, the appellant filed a general denial.

The cause was submitted to a jury for trial and the jury returned a verdict in favor of appellee in the sum of $1,385.00. Thereafter, a remittitur was filed by appellee in the sum of $347.00. Appellant filed its motion for a new trial, which was overruled by the court and judgment was rendered by the court for appellee for $1,038.00 and costs.

Error is assigned to the overruling of appellant's motion for a new trial; and the specific grounds for a new trial, the ruling upon which appellant relies for a reversal herein are: (1) The verdict of the jury is contrary to law; (2) the verdict of the jury is not sustained by sufficient evidence; (4) the refusal of the court to give instruction No. 1 tendered by appellant; and (5) the giving of instructions No. 3 and No. 6 by the court.

The complaint is in one paragraph and contains the usual allegations of a complaint of this character, alleging the issuance of the policy, the payment of premiums and the death of insured, the amount due on the policy and the failure of payment thereof by appellant. The complaint also contains a copy of the policy in suit.

There is no dispute in the evidence as to the issuance of the policy and the payment of the premiums to carry the policy beyond the date of October 18, 1932. It appears from the evidence that on October 18, 1932, a man was struck and killed by an automobile on U. S. Highway No. 30, near Merrillville, Indiana; that the body was taken to St. Anthony Hospital in Gary, Indiana, and later removed to an undertaking establishment in Gary, where it was photographed the next day, and fingerprints taken. It is this body that appellee contends is the body of Zaharia Pinta, who was insured by the policy in suit. The question of the identification of this body as that of the insured is strenuously contested by appellant, and there is sharp conflict in the evidence relative thereto. In determining the question involved, this court is called upon to consider the evidence.

None of the witnesses who identified the body as that of the insured saw the dead body, but such identification was made from looking at a photograph of the

head and upper part of the body, which photograph was introduced in evidence, being plaintiff's exhibit No. 5.

In determining the sufficiency of the evidence to support the verdict, this court on appeal must lay aside and disregard conflicting evidence of appellant and consider the question only on the evidence and inferences deducible therefrom most favorable to appellee. *New York Central R. R. Co.* v. *Thompson* (1939), 215 Ind. 652, 21 N. E. (2d) 625; *Orey* v. *Mutual Life Insurance Co. of N. Y.* (1939), 215 Ind. 305, 19 N. E. (2d) 547; *Mercer Casualty Co.* v. *Ranes* (1938), 105 Ind. App. 470, 15 N. E. (2d) 746.

The insurance policy in question was introduced in evidence and was under date of June 16, 1930, naming the insured Zaharia Pinta and giving his age at next birthday as 50 years, reciting the conditions under which loss would be paid upon accidental death, and the amount thereof, about which facts there is no controversy.

The application for the policy was likewise introduced in evidence and disclosed among other things, the name of applicant as Zaharia Pinta, residence 3477 Penna. Ave., East Chicago, his occupation, a dish washer at Venus Cafe, Mich. Ave., age at next birthday 50 years, born December 25, 1880, in Roumania. This application was signed by mark by applicant. The application was accompanied by a statement of the agent of the Insurance Company, Louis Bank, and among other things disclosed that applicant lived with John Ciulei. The medical examiner's report was also attached to the application, which report disclosed that applicant would be 50 years old his next birthday, and that he was 5 feet 4½ inches tall and weighed 138 pounds.

Ray Yoder, the driver of an automobile which struck and killed a man on October 18, 1932, identified the photograph, plaintiff's exhibit No. 5, as a photograph of the man so killed.

Louis Bank, the agent of appellant insurance company, who took Pinta's application for the policy in question and delivered the same, in company with the superintendent of the insurance company, testified that he knew Zack Pinta, that he had seen him three or four different times and that the photograph of the dead man was a photograph of Zack Pinta, and that he recognized his ear.

It further appears from the evidence of Pete Miller that Zaharia Pinta, the insured, had made his home at the Lake County Poor Farm for nearly two years and that during the time he lived at the poor farm and at the time he left, he did not wear a mustache or beard; and that on October 18, 1932, he left said poor farm. That said witness, Peter Miller, also an inmate of said county farm, knew the insured by the name of Zack Pinta, that he (Pinta) wore no mustache or beard during the time he lived there, and that he (Miller) had shaved Pinta every Saturday while he was there, and also on October 16, 1932, a day or more before Pinta left the farm, and that he had not seen Pinta since. Miller further testified that Pinta was a Roumanian and that Exhibit No. 5, the photograph, is a picture of "Zack Pinta, my friend." That he saw the photograph in 1935. The witness also detailed some characteristics of the appearance of Zack Pinta.

It further appears from the evidence of Andrew Russell, a tavern keeper, that he knew Zaharia Pinta, and he (Pinta) had his meals at his tavern part of the time and that he had known Pinta ever since 1928 and that he last saw him in 1931. He further testified that

Pinta had occasionally worked for him and that the photograph, Exhibit No. 5, is a picture of Zaharia Pinta, and that he had identified this exhibit as a photograph of Pinta at the coroner's inquest; but prior to that he had seen him twice a week. That he had not seen Pinta since 1931. He further testified he was five feet five inches tall and that he weighed 135 to 150 pounds and had grey eyes and dark hair. Said witness further testified that Pinta was a dark complexioned fellow, that he wore a few whiskers part of the time, and that he had never seen Pinta alive since 1931, and that he had never heard of Pinta being arrested.

Nick Brandush testified that he had known Pinta in Europe prior to his coming to this country and that he had last seen him in 1931. Upon examination of the photograph, Plaintiff's Exhibit No. 5, by covering the face below the nose, he identified it as a photograph of Zack Pinta. He gave his reason for confining his identification to the top portion of the face in the photograph that said Pinta had worn a mustache and beard when he had known him, but that he was as sure the photograph was one of Zack Pinta as he would be about a picture of his own wife. That "I would not *think* it is Zack Pinta, I would say that *is* him." He also testified that Pinta was five feet six or seven inches in height.

The evidence further disclosed that the insured, Zaharia Pinta was a Roumanian, that he was unmarried, that he drank intoxicating liquor and that he spent some of his time in taverns singing and loafing. Different witnesses testified that Pinta was from five feet four inches to five feet six or seven inches in height and that he weighed approximately 150 to 165 pounds. Further evidence was introduced that he wore a blue cotton shirt, blue overalls and yellow shoes while at the county farm; that his eyes were dark grey and

his ears were flat against his head, and that he was approximately fifty-six years old on October 19,. 1932. The evidence further disclosed that the man who was killed on the highway wore blue denim overalls, cap and shoes, a brown overcoat, that his eyes were grey, that he had a three days growth of beard and that he was five feet nine and one-half inches tall, weighed approximately one hundred and seventy pounds, and that there was a comminuted fracture of both bones below the knee of the left leg. It is further shown by the evidence that a body will increase in length after death approximately one inch, and in case of fractured bones such elongation might be more.

The witness, Victoria Breaz, testified that she knew Zack Pinta, that he had lived at her home and that she last saw him in 1931, and that when he left her home, she gave him a brown overcoat.

The evidence further discloses that on the 18th day of September, 1925, one *Zack Penter* was employed by the Inland Steel Company, that his fingerprints were taken and that such fingerprints were altogether different and do not correspond to the fingerprints of the dead man taken by the police on October 18, 1932. It further appears that the insured had worked at the Inland Steel Company plant.

Upon the issue of the identity of a person, duly authenticated photographs are admissible in evidence; and the fact that this photograph was positively identified as a photograph of the insured by at least four witnesses constitutes a *prima facie* case of his identity; and while we do not say that the photograph is conclusive to such an extent that evidence in conflict with it will be ignored, yet, we cannot say that there was no evidence of such identification. The *prima facie* case thus created is subject, of course,

to rebuttal evidence, but in considering such rebuttal evidence, this court by a long established rule, is not permitted to weigh the evidence. We are aware that there is a sharp conflict in the description as to the weight and height, the age and other characteristics of the man killed and the insured, but we cannot say that there was no evidence from which the jury could arrive at the verdict, so found by them.

Where two inferences may be drawn from the evidence, the inference drawn by the jury is conclusive on the courts.

In the case of *Chicago etc. R. Co.* v. *Vandenberg* (1905), 164 Ind. 470, 485, 73 N. E. 990, the Supreme Court of Indiana states:

"In cases like the one at bar, where, under the facts and circumstances, there is room for two inferences to arise in regard to the ultimate fact of the defendant's negligence, the jury having drawn one on that issue in favor of the plaintiff, such inference will be accepted by this court as conclusive."

The verdict of the jury was a general verdict and we are not apprised as to what particular features of the evidence it had in mind in rendering the verdict. Under the evidence it will not be assumed by this court that it indulged only in an inference, as there was positive testimony that the photograph of the dead man was that of the insured; and considering that testimony in connection with the testimony of Nick Brandush, that Zack Pinta was five feet six or seven inches tall and weighed 165 pounds, and that the stature of a dead man increases as much as one inch and under a condition of fractured bones more than

that, we think the jury could have properly found there was some evidence to establish identification of the insured.

Appellant insists that the fact that there is no similarity in the fingerprints of *Zack Penter* and the fingerprints of the dead man is so conclusive that the jury could not find the dead man was the body of the insured. We do not agree with this contention. The identities of *Zack Penter* and the insured have not been established beyond question as one and the same.

It is true that the height of the insured, as shown by the examiner's report attached to the policy, was five feet four and one-half inches in June, 1932, ▪ and that he weighed 138 pounds, but divers witnesses fixed his weight at from 150 to 165 pounds and his height at from five feet four inches to five feet six or seven inches when they knew him, but this evidence is for the jury to weigh and determine; and when it has reached a conclusion, this court will not disturb it, when there is any evidence, either direct or inferential, from which it could so find. We are of the opinion that there is some evidence to sustain said verdict, and that such verdict is not contrary to law.

Appellant next contends that instruction No. 3 given by the court was erroneous and prejudicial to appellant. ▪ This instruction, after properly informing the jury as to the meaning of preponderance of the evidence, further states, "It does not mean that the greater number of witnesses shall be produced upon one side or the other, but that upon the whole evidence the jury believes the greater probability of the truth to be upon the side of the party having the affirmative of the issue." It is evident that the court somewhat confused "preponderance of the evidence" and "burden of proof."

We do not approve this as a model instruction, but we are of the opinion that the jury was not misled thereby.

Instructions numbered 2 and 4 given by the court properly instruct the jury as to the burden of proof and that such burden of proof was upon appellee.

Instruction No. 6 given by the court, and contended erroneous by appellant, reads as follows:

> "You are further instructed that it is the law of this state that when a policy of life insurance shall become a valid claim by the death of the insured, settlement shall be made upon receipt of due proof of death and of the interest of the claimant not later than two months after receipt of such proof; this provision of the law is inapplicable, however, where the insurer is not liable, or for any reason is legally excused from making payment on the claim. Accordingly, if your verdict is for plaintiff upon the issues joined in this case, you may compute interest on the amount of the claim at the rate of 6% per annum from the expiration of two months from the time such due proof, if any, of death of the insured and interest of the plaintiff was received by defendant."

This instruction is erroneous. The section of the statute referred to in the instruction, § 39-4206 (12), Burns' 1940 Replacement, expressly excepts policies of the nature of the one in suit. However, in our opinion such instruction would only contribute to the amount of recovery, and such error has been cured by the remittitur filed and no substantial rights of appellant have been affected.

Instruction No. 1 tendered by appellant, and refused by the court, directed a verdict for appellant. Error is predicated upon the refusal of the court to so instruct the jury.

It is our opinion that this instruction was properly refused. A peremptory instruction for defendant should

not be given where there is some evidence to support the material allegations of the complaint, and there was some evidence submitted herein that did support such allegations.

Judgment affirmed.

NOTE.—Reported in 36 N. E. (2d) 965.