WADE *v.* THREE SISTERS, INC.

[No. 19,563. Filed November 14, 1962.]

*William K. Bennett,* of Lafayette, for appellant.

*Stanton Babcock,* and *Stuart, Branigin, Ricks & Schilling,* of counsel, both of Lafayette, for appellee.

PFAFF, J.—Appellant's action to recover damages for personal injuries suffered in a fall in the defendant-appellee's store resulted in a directed verdict

for the appellee at the end of the plaintiff's evidence. The appellant's motion for a new trial based upon the granting of the directed verdict and peremptory instruction was denied, and judgment was entered on the verdict. The appellant contends that the evidence was sufficient to present a jury question.

The procedure for determining when a court may properly grant and give a peremptory instruction for the defendant has been developed in a long line of cases. One of the most recent decisions is *Huttinger* v. *G. C. Murphy Company* (1961), 131 Ind. App. 642, 172 N. E. 2d 74. However the leading authority is *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 680, 122 N. E. 2d 734, in which the Supreme Court set out certain "compelling laws" of which a trial court must take cognizance prior to the direction of a verdict. The court will direct a verdict:

"When there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant. *Jackson Hill Coal and Coke Co.* v. *Bales et al.* (1915), 183 Ind. 276, 279, 108 N. E. 692. *Slinkard* v. *Babb* (1953), 125 Ind. App. ——, and cases there cited. 112 N. E. 2d 876, 878; *Gregory* v. *The C. C. C. and I. R. R. Co.*, 112 Ind. 385, 388, 14 N. E. 2d 228.

". . . the court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the party against whom the motion for a peremptory verdict is directed. *Jackson Hill Coal and Coke Co.* v. *Bales et al.* (1915), 183 Ind. 276, 280, *supra*; *American Food Co.* v. *Halstead* (1905), 165 Ind. 633, 638, 76 N. E. 251. See also *Heath* v. *Sheets* (1905), 164 Ind. 665, 667, 74 N. E. 505. *Slinkard* v. *Babb* (1953), 125 Ind. App. ——, and cases there cited; 112 N. E. 2d 876, 878, *supra*.

"In determining whether a peremptory instruction should be given the court must accept as true all facts which the evidence tends to ■ prove and draw, against the party requesting such instruction, all inferences which the jury might reasonably draw. *Orey* v. *Mutual Life Insurance Company of New York* (1939), 215 Ind. 305, 306, 19 N. E. 2d 547; *Holtz* v. *Elgin, etc., Ry Co.* (1951), 121 Ind. App. 175, 98 N. E. 2d 245; *Chacker* v. *Marcus* (1949), 119 Ind. App. 672, 674, 86 N. E. 2d 708, 89 N. E. 2d 455; *Balzer* v. *Waring* (1911), 176 Ind. 585, 594, 95 N. E. 257, 48 L. R. A., N. S. 834."

The evidence must be examined in the light most favorable to the appellant since the appellee requested the peremptory instruction. The record evidence discloses that the appellant entered the appellee's women's retail apparel shop to purchase a dress. It took her approximately twenty to thirty minutes to select the dress. After she had chosen the dress and paid for it, she turned to leave the store and it was at this time that she slipped and fell. Appellant stated that she did not see any object on the floor before she slipped; that she saw the object after slipping; and that it was a foreign substance of a milky color. The appellant did not see any customers in the particular area of the store where she was injured before her actual fall. There is evidence that the appellant could not see this vicinity while she was in the dressing room and that at least part of the time her full attention was not directed to the spot where she fell.

Appellant contends that the evidence is sufficient to create a negative inference that either the substance was on the floor for thirty minutes or somehow one of appellee's employees caused it to be there. In either event appellant argues that a jury question as to breach of duty to an invitee is presented and that it is unimportant whether it was through an

act of an employee or failure to inspect that the breach was created.

> ". . . Courts have often been asked to exclude testimony based on what may be called *negative knowledge, i. e.,* testimony that a fact did not occur, founded on the witness' failure to hear or see a fact which he would supposedly have heard or seen if it had occurred.

> "Yet there is no inherent weakness in this kind of knowledge. It rests on the same data of the senses. It may even sometimes be stronger than affirmative impressions. The only requirement is that the witness should have been so situated that *in the ordinary course of events he would have heard* or seen the fact had it occurred." 2 Wigmore on Evidence, §664, p. 778 (3rd Ed.).

Indiana has dealt with negative inferences in several cases. Usually the issue dealt with was: Did the train whistle blow. Two of the cases involved the same crossing, but the courts distinguished the cases and arrived at different results. The first case was *Hummel* v. *New York Cent. R. Co.* (1946), 117 Ind. App. 22, 66 N. E. 2d 901. In that case the appellant's witness testified that she did not hear the train whistle; however she admitted that she had grown accustomed to these whistles and never noticed them. The court held that a finding based on this testimony could be the result only of speculation, surmise and conjecture. Nine years later in the second case at the same crossing, *Callahan, Admr., etc.* v. *N. Y. Cent. R. R. Co.* (1955), 125 Ind. App. 631, 125 N. E. 2d 263, negative testimony was effectively used by the appellant. The court said that the testimony of two named witnesses was "some evidence" which the jury might properly weigh and consider in determining whether the signals were given. *Hummel* v. *New York Cent. R.*

*Co., supra,* was adhered to as approving the general rule that the testimony of one that he did not hear the whistle, although he was near a crossing and in a situation to have heard it, is sufficient to support the inference that the warning signal was not given. The point of distinction is that in this latter case the witnesses, who gave the negative testimony, did not state that they had grown accustomed to train whistles so that they would not have heard a whistle in the ordinary course of events. A third train decision, *Pennsylvania R. Co.* v. *Rizzo* (1949), 119 Ind. App. 505, 86 N. E. 2d 91, 87 N. E. 2d 885, held that the testimony of the appellee's witness that he did not remember hearing the train's whistle and that he would not say that the train whistle blew or that it did not blow was insufficient to support the needed inference. The case was reversed and the appellant was granted a new trial.

In *Antibus* v. *W. T. Grant Co.* (1938), 297 Ill. App. 363, 17 N. E. 2d 610, the Appellate Court of Illinois was confronted with a factual situation similar to the case before us. The appellant went to the appellee's dry goods store. As he descended to the basement, he met two women and a child coming up the stairway. He did not see a banana peeling at this time on the stairs. He remained in the basement approximately twenty minutes. On the way up the stairs, he slipped on a banana peel. Appellant testified: "While I was down in the basement I did not see anyone using the stairway." In addition he admitted that his back was toward the stairway for three or four minutes. While the court did not discuss negative inferences specifically, it held that this evidence was insufficient. It reversed a verdict for the appellant and stated that

the appellee's motion for a directed verdict should have been granted.

It may be said, we think, in cases similar factually to the present one that the evidence is insufficient to support a negative inference when a witness is not in a situation to physically observe the area in question for sufficient time to become cognizant of the existing conditions or when a witness would not have observed in the course of his usual and ordinary activity and conduct. The evidence shows that the appellant, Mrs. Zola Wade, could not observe the vicinity of the store where she later fell while she was in one of the dressing rooms. The evidence does not reflect that there was any particular reason for the appellant to observe the spot where she slipped prior to her actual fall.

In addition to the contention that the evidence warranted the support of a negative inference, the appellant urges that there was evidence from which a jury could have concluded that no customer was in the vicinity of the spot where she slipped for a period of approximately five minutes prior to her fall. Although there is evidence that some of the employees were standing idle close to the spot where she slipped and fell, the record contains no testimony that any employee had actual knowledge of the condition of the floor. Nevertheless, the appellant insists that under these conditions this period of five minutes was sufficient to provide a jury question.

Cases involving a shopkeeper's liability to his customer have been before this court in the past. In the case of *J. C. Penney, Inc.* v. *Kellermeyer* (1939), 107 Ind. App. 253, 264, 19 N. E. 2d 882, the appellant went to the appellee's store to purchase a cap and a shirt for her husband and while she was there slipped

on a loose object which from the evidence could not be identified. The court distinguished this case from many of the cases in this legal area. In discussing the sufficiency of the evidence, the court said:

"An inference of fact in the instant case upon which to base negligence of the appellant in respect to the loose object on the floor would have to rest upon conjecture, guess work or speculation upon which verdicts cannot properly be based. There is no evidence that the object was upon the floor for any length of time whatever nor can a reasonable inference be drawn from the evidence that it did in fact remain on the floor for any length of time. There is no evidence whatever that the appellant or its agents or servants knew that the object was on the floor or that it was upon the floor for such time and under such conditions that in the exercise of reasonable care they should have known about it. There is no evidence in the case showing either actual or constructive notice to the appellant that the loose object was upon the floor. From the evidence no one can say what the loose object was."

The court concluded that the trial court should have granted the defendant's motion for a directed verdict. The judgment below was reversed and a new trial was granted.

The same rule was adopted in the case of *Kroger Co.* v. *Troy* (1952), 122 Ind. App. 381, 105 N. E. 2d 174, a case in which the appellant slipped on a greasy spot on the floor of the appellee's food store. The court said that the fact that appellee's food store was a food market did not mean a different rule of negligence applied. Thus, *J. C. Penney, Inc.* v. *Kellermeyer, supra,* and *Kroger Co.* v. *Troy, supra,* supply the Indiana rule. This also appears to be the rule in other jurisdictions. See prevailing annotations in 61 A. L. R. 2d 28, *et seq.* and 62 A. L. R. 2d 33, *et seq.*

The Pennsylvania Supreme Court in *Parker, Aplnt.* v. *McCrory Stores Corp.* (1954), 376 Pa. 122, 125, 101 A. 2d 377, upheld a nonsuit in a case where the appellant contended that he had fallen on a floor made slippery by the tracking of snow which reads as follows:

> *"No court has ever held that five minutes is sufficient constructive notice of a dangerous condition*; to so hold would be to make the defendant an insurer. If that were the law, then everytime it rained or snowed the owner of a large department store would have to employ a great many extra people for the sole purpose of inspecting every minute or every five minutes every entrance, aisle, corridor and stairway in the store, in order to instantly clean up and eliminate every wet or possibly slippery, or possibly dangerous condition and every puddle which might be found to exist anywhere in the store. Such a standard is not only unreasonable and unsupported by any authority, but is so absurd that it would bankrupt every large store owner in Pennsylvania." (Our emphasis.)

Upon the record evidence before us, the appellant has failed to adduce any evidence or inferences tending to show (1) that the object or material upon which she apparently stepped and slipped to her fall was a part of or in any way connected with the merchandise sold in the store; (2) that the object or material was upon the floor for any length of time whatever; or (3) that the appellee or its agents or servants knew that such object or material was on the floor or that the same had been upon the floor for such time and under such conditions that in the exercise of ordinary care they should have known about it. In fact, no reasonable inference of fact to support the negligence charged to the appellee could be drawn from the evidence and any required infer-

ence would, of necessity, have its foundation in conjecture, guess or speculation.

We find no error in the action of the trial court in directing a verdict for the appellee and in giving the complained of peremptory instruction.

Judgment affirmed.

Kelley, C. J., Bierly and Gonas, JJ., concur.

NOTE.—Reported in 186 N. E. 2d 22.