Lambert SUTTON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49A02–8912–CR–629.[1]

Court of Appeals of Indiana,
First District.

May 28, 1991.

---

1. This case was reassigned to this office on May 2, 1991.

William L. Soards, Soards & Fruechten-icht, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Gary Damon Secrest Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Lambert Sutton appeals his conviction, after a jury trial, of possession of a bomb loaded with explosives, for which he received an eight-year sentence, with three years suspended and two years of probation. He claims that reversible error stems from improperly admitted exhibits and that the evidence is insufficient to support his conviction. We affirm.

The evidence reveals that Sutton vigorously disliked a woman, Terry Turnbill,

whom he blamed for his separation from his wife. After numerous physical threats to the woman, Sutton asked Larry McCoy to purchase dynamite for him. Sutton told McCoy he needed the explosives to blast tree stumps out of the ground, and McCoy bought dynamite and blasting caps with Sutton's money. Afterward, Sutton threatened and committed acts of violence upon both his wife and Turnbill. Some of the threats involved the use of dynamite.

One evening, Sutton's son saw Sutton approach Turnbill's car at her place of employment and asked him what he was doing. Sutton responded that he was going to kill Turnbill. Sutton then asked his son to take him to his car at a nearby motel. Sutton retrieved a bomb from his car, and his son drove him back to Turnbill's car. Sutton then activated the bomb, placed it under Turnbill's car, and told his son he would detonate it later by remote control when Turnbill was in the car.

The police were summoned after Sutton left the scene, and a bomb technician deactivated the bomb. The bomb included six sticks of dynamite, two electric blasting caps, and a battery. A bomb expert concluded that the bomb was functional.

## I.

Did the trial court improperly admit photographs of dynamite and blasting caps without an adequate foundation?

█ Sutton objected to the admission of photographs in exhibits 2 and 3 because witness McCoy could only testify that the items looked like the explosives he had purchased but he was not sure they were the exact items. Sutton claims this uncertainty, coupled with a lack of testimony about who took the photographs, renders the foundation for the admission of the exhibits insufficient.

█ A trial court has wide discretion in determining the admissibility of photographic evidence, and its determination will not be disturbed absent a showing of abuse of discretion. Once it is established that a photograph is a true and accurate representation of that which it is intended to por-

tray, its admissibility turns on the question of relevance. *Ogburn v. State* (1990), Ind. App., 549 N.E.2d 389.

The photographs here were unquestionably relevant, and Sutton makes no claim they were not. McCoy testified the dynamite and blasting caps in the photographs were identical to the items he had purchased for Sutton. He therefore stated, at the minimum, that the items shown in the photographs are like the ones associated with the crime. *Andrews v. State* (1989), Ind., 532 N.E.2d 1159. This testimony also shows that these items are connected to Sutton; and subsequent testimony connects the explosives and Sutton to the crime. *Id.* Any lack of authentication of the items or connection to Sutton reflects only upon the weight which the evidence may be given and not upon the admissibility of the evidence. *Sons v. State* (1987), Ind., 502 N.E.2d 1331; *Greene v. State* (1987), Ind., 515 N.E.2d 1376. Thus, there was no error in the admission of the photographs of the dynamite and blasting caps.

## II.

Did the trial court improperly deny Sutton's motion for mistrial after the court had suppressed evidence that had led to the discovery and production of the photographs in exhibits 2 and 3?

The State attempted to introduce evidence about how it had obtained certain explosives purchased by witness McCoy. These explosives had remained unused and were apparently hidden by Sutton. The evidence reveals that Sutton had told his former attorney where the explosives were located, and the attorney in turn had informed the police of their whereabouts. In a hearing outside the presence of the jury, Sutton argued that his statement to his counsel was a privileged communication and should be suppressed. The trial judge granted this motion but denied Sutton's subsequent motion for mistrial due to the admission of exhibits 2 and 3, photographs of the explosives, which he claimed were only discoverable through the divulgence of the privileged communication between Sutton and his former attorney.

 The result of the trial court's ruling was to suppress statements from Sutton to his former attorney because the statements could connect Sutton to the explosives. The trial court did not suppress the statements because they were privileged communications. Sutton testified outside the presence of the jury that he had told his former attorney about the location of the explosives and had instructed him to relay the information to his daughter, who then, in turn, could produce the explosives for the police. These statements, made by Sutton and meant for communication to a third person, were not confidential and are not protected by the privilege. Such statements were made by Sutton for the purpose of being communicated and acted upon by the attorney. *Bruce v. Osgood* (1887), 113 Ind. 360, 14 N.E. 563.

 The ruling consequently did not suppress the photographs of the explosives themselves, which were adequately connected to Sutton through the testimony of witness McCoy. The trial judge was apparently concerned that, if the statements were admitted, the explosives would have been unfairly connected with Sutton and would have been unfairly revealed to have been hidden by him. A summary of the trial court's decision reveals that the statements were suppressed because the attorney had no permission to relay the information to the police but only to Sutton's daughter. However, just because the trial judge agreed that the State could connect the explosives to Sutton without Sutton's own statement to his former attorney does not mean the photographs of the explosives themselves must have been suppressed. As noted, Sutton told the attorney about the location of the explosives so that the attorney could inform a third person, who would eventually provide them to the police. The statements were not privileged, and the photographs were admissible with an adequate foundation in this case. In such a situation, the trial court need not have granted a mistrial due to the admission of the photographs of the dynamite and blasting caps.

### III.

Did the trial court improperly admit certain exhibits because they were not properly authenticated?

The State sought to introduce certain United States Treasury Explosive Transaction Forms through testimony from McCoy, who stated he had completed the forms when he purchased the explosives. Sutton objected at trial on the ground that McCoy was not the keeper of the documents and therefore could not authenticate them. We will consider only this objection on appeal.

 We first note that McCoy could properly authenticate the forms himself because he personally completed them when he bought the explosives. However, even if the forms were improperly authenticated, their admission does not constitute reversible error. McCoy's personal testimony established the same facts recited in the forms: that McCoy had purchased the dynamite and blasting caps. Thus, reversal is not warranted because the same or similar evidence was first admitted without objection or contradiction. *McCovens v. State* (1989), Ind., 539 N.E.2d 26.

### IV.

Did the trial court improperly admit pieces of the explosive device?

 Sutton claims the State failed to establish a proper chain of custody for the admission of the explosive device, which was broken into pieces when it was disarmed. We conclude the State sufficiently showed the continuous whereabouts of the exhibits beginning with the time they first came into police possession. Sutton has merely raised a possibility or potential of tampering, inasmuch as he claims the pieces "could be subject to tampering."

 The less an exhibit is susceptible to alteration, tampering, substitution, or fungibility, the less strictly the chain of custody rule is applied. The foundation for introduction of physical evidence, the characteristics of which can be identified by eyewitness identification, is fulfilled when the witness is able to identify the item and the item has relevance to the issues in the case.

*Wray v. State* (1989), Ind., 547 N.E.2d 1062.

Here, Sutton does not dispute that the explosive device and its pieces were relevant. The State introduced testimony from a police officer who stated he collected the pieces of the device after it had been disarmed and who identified each of the exhibits as it was handed to him. This eyewitness identification was sufficient to permit the introduction of the exhibits.

### V.

Is the evidence sufficient to support Sutton's conviction of possession of a bomb loaded with explosives?

■ The evidence most favorable to the verdict reveals that Sutton asked McCoy to purchase dynamite for him, and McCoy bought dynamite and blasting caps with Sutton's money. Afterward, Sutton threatened and committed acts of violence upon his wife and Turnbill. Some of the threats involved the use of dynamite. One evening, Sutton retrieved a bomb from his car, activated the bomb, placed it under Turnbill's car, and told his son he would detonate it later by remote control when she was in the car. The police were summoned after Sutton left the scene, and a bomb technician deactivated the bomb. The bomb included six sticks of dynamite, two electric blasting caps, and a battery. A bomb expert concluded that the bomb was functional.

A person who owns or possesses a bomb loaded with explosives commits a class C felony. Ind.Code 35–47–5–8(2). From the viewpoint of the evidence most favorable to the verdict, we conclude there is substantial evidence of probative value to support the conclusion that Sutton possessed a bomb loaded with explosives. Sutton merely wishes us to reweigh the evidence and rejudge the credibility of the witnesses. He also wishes us to view the evidence in its most unfavorable light. This we will not do.

Sutton finally claims the evidence is insufficient because the State built inferences upon inferences to support the conviction. As we have received recent arguments in this vein, we will address the contention.

■ With regard to the contention that, for the purpose of proving a cause of action, an inference cannot be built upon another inference, our supreme court has concluded with Professor Wigmore that: "There is no such rule; nor can there be." *Orey v. Mutual Life Insurance Co.* (1939), 215 Ind. 305, 19 N.E.2d 547. *See also Brown v. State* (1941), 219 Ind. 21, 36 N.E.2d 759; *Johnson v. State* (1927), 199 Ind. 73, 155 N.E. 196; *Hinshaw v. State* (1897), 147 Ind. 334, 47 N.E. 157; *City of Alexandria v. Allen* (1990), Ind.App., 552 N.E.2d 488; *Lafayette Bank & Trust Co. v. Price* (1982), Ind.App., 440 N.E.2d 759; *In re Patton's Will* (1950), 121 Ind.App. 256, 95 N.E.2d 311, *rehearing denied,* (1951), 121 Ind.App. 256, 96 N.E.2d 353; *Spencer Light, Heat & Power Co. v. Board of Comm'rs of Owen County* (1920), 74 Ind.App. 199, 128 N.E. 700; *Scottish Union & National Insurance Co. v. M.E. Linkenhelt & Co.* (1918), 70 Ind.App. 324, 121 N.E. 373; *Indian Creek Coal & Mining Co. v. Calvert* (1918), 68 Ind.App. 474, 119 N.E. 519, *rehearing denied,* 68 Ind.App. 474, 120 N.E. 709; *Public Savings Ins. Co. of America v. Greenwald* (1918), 68 Ind.App. 609, 121 N.E. 47; *Cleveland R. Co. v. Starks* (1914), 58 Ind.App. 341, 106 N.E. 646, *trans. denied.* What is actually meant by the statement found in many cases, that an inference cannot be based upon an inference, is that an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility. *Shutt v. State* (1954), 233 Ind. 169, 117 N.E.2d 892.

There is no such rule in the sense in which the language itself implies; and if, in a sense, such a rule may be said to exist, the phraseology used to express it is inaccurate and misleading. The meaning is quite different than appears upon its face. The courts have apparently often used this phraseology merely as a convenient way of disposing of evidence which it regarded as too remote or uncertain to prove the ultimate facts at issue; and the language has

become a sort of judicial slogan, used carelessly, inaccurately, and to the confusion of the profession. *Orey*, 215 Ind. 305, 19 N.E.2d 547.

Recent cases which have used the alleged rule appear to have originated in this Court rather than our supreme court. *See Lewis v. State* (1989), Ind.App., 535 N.E.2d 556; *Oliver v. Estate of Clemons* (1968), 142 Ind.App. 499, 236 N.E.2d 72, *trans. denied; Haney v. Meyer* (1966), 139 Ind. App. 663, 215 N.E.2d 886, *trans. denied.* We have examined these cases. To the extent they rely upon the non-existent rule, they stand for the proposition that a verdict based upon conjecture or speculation cannot stand.

Cases cited by Sutton from our supreme court which rely on the rule were decided before that court's clear statements to the contrary in the passages above. *Hudson v. State* (1926), 198 Ind. 422, 154 N.E. 7; *Dowell v. State* (1913), 181 Ind. 68, 101 N.E. 815. We are bound by the controlling decisions of our supreme court. In light of the decisions we have cited above, these prior decisions cited by Sutton only stand for the proposition that a verdict cannot be based upon mere conjecture or speculation. *See Buckner v. State* (1969), 252 Ind. 379, 248 N.E.2d 348; *Walker v. State* (1968), 250 Ind. 649, 238 N.E.2d 466; *Hutchinson v. State* (1967), 248 Ind. 226, 225 N.E.2d 828.

The verdict in this case is not based upon mere guess, conjecture, possibility, speculation, supposition, or surmise. The verdict here rests upon sound direct and circumstantial evidence and upon inferences with bases in fact.

Judgment affirmed.

BUCHANAN and CHEZEM, JJ., concur.