CHRISTEN *v.* STATE OF INDIANA

[No. 28,604. Filed January 4, 1950.]

*R. C. Parrish, Robert Parrish, James P. Murphy, Ralph Miller* and *Giles Pierre,* all of Fort Wayne, for appellant.

*J. Emmett McManamon,* Attorney General; *Charles F. O'Connor* and *Merl M. Wall,* Deputy Attorneys General, for appellee.

YOUNG, J.—Appellant was charged with first degree murder by an indictment in five counts. He pleaded not guilty. The issue was submitted to a jury, which convicted him of second degree murder. Judgment was entered upon the verdict and appellant was sentenced to the State prison for life. He filed a motion

for a new trial, the overruling of which is the only error assigned here. By the motion for a new trial the sufficiency of the evidence, the validity of certain instructions and alleged error of the court in admitting and refusing to admit certain testimony are presented.

The woman, alleged to have been murdered, died on March 17, 1945. The indictment was returned on November 8, 1948, and appellant was arrested on that day in Denver, Colorado. At the time of the trial he was 38 years old. He was born in Ft. Wayne and had lived there continuously until he moved to Denver with his mother in June, 1947.

In passing upon the sufficiency of the evidence, we may not weigh same, but if there is any evidence, or any reasonable inference from any evidence, upon which the jury could have found the appellant guilty of second degree murder, we must accept the jury's finding. There was no direct evidence of appellant's guilt. It is our duty, however, to consider the evidence for the purpose of determining whether there is circumstantial evidence of probative value to sustain the verdict. In doing this, we will look only to the evidence most favorable to the State and to facts as to which there is no conflict.

On March 5, 1945, a soldier from a nearby military station came into Ft. Wayne, Indiana, and found his way from one tavern to another until in the third one visited he met a young woman whom we will call the deceased. He had drunk several bottles of beer and she was very intoxicated before he encountered her. She left the tavern and the soldier followed her. After the soldier caught up with the deceased, he walked with her only a short distance when she fell to the ground. He picked her up and had his arm around

her waist, supporting her as they walked along the street. At this point a civilian, afterwards identified by the soldier as the appellant herein, whom the soldier had seen at the door of the tavern as he left, came up and took liberties with the deceased and asked the soldier what he was going to do with her. The soldier told him he was going to take her home. The civilian told him not to do that but to take her back in a near-by alley and the civilian undertook to show the soldier the way to the alley. They proceeded down the alley just a short distance to a stairway entrance where they laid the deceased upon the stairs. In this situation the civilian raised the deceased's clothing to her waist and told the soldier to proceed.

The deceased was so drunk that she was only half conscious and the civillian, as the soldier leaned over her, reached over the soldier's shoulder and slapped her twice to wake her up and tore her dress from her left shoulder. While the soldier was crouched over the deceased, an automobile, with a woman driving, drove into the alley and its headlights were thrown upon the stair entrance. The soldier jumped up and ran as he adjusted his clothing. The civilian, afterward identified by the driver of the automobile as the appellant herein, also ran but returned and talked with the woman in the automobile. The soldier was not seen again that evening, but the civilian walked to the stair doorway where the deceased was lying and said, "Drunk again, bitch," and led her away. That was about 11 P. M. on March 5. At about that time a passerby saw a man, whom he identified as the appellant, emerging from the alley, where the foregoing happenings occurred, with a woman. He testified that they crossed the street and entered the same alley on

the opposite side of the street, and when they were in the alley the man roughly pushed the woman against the building at one side. At about 3 A. M., on March 6, the deceased was found by a night watchman on his round groaning and lying nude in the alley which the passerby said he had seen appellant and a woman enter at 11 o'clock, about four hours before. She was battered and bruised and lacerated and there were indications that she had been kicked or stamped upon by someone. The merchant policeman had passed through the alley, where she was found, at about 12:45 A. M. on the morning of March 6, but did not see or hear her. It appeared, however, that she was found in an offset of the alley and the merchant policeman testified that he used his flashlight only at such buildings as he was supposed to check and that there could have been people in dark places of the alley that he would not have seen in the ordinary course of his inspection. The deceased was taken to a hospital immediately and died about 12 days later from pneumonia induced by exposure and the beating which she apparently had received.

The appellant was known to the police, as was an automobile which he customarily drove, and was seen by three police officers at different times driving about in his automobile at or about the time the deceased was found and near the place where she was found. Appellant, as a witness in his own behalf, admitted he had been arrested four or five times for disorderly conduct arising out of conduct toward strange women while driving his automobile at night about the streets of Ft. Wayne.

The soldier learned from the newspapers that the deceased had told the police that a soldier had been

with her that evening and that the police were looking for such soldier. He reported to the police. He was taken to the place where appellant worked but was unable to identify him as the man who had been in the alley with him. Likewise, he failed to identify him at a later time in Colorado, where the appellant had gone to live, and at another time in Memphis he was shown a picture of Ralph Lobaugh, who, he was told, had confessed the killing of the deceased, and he identified the picture as being a likeness of the man who had led him into the alley with the deceased on March 5, 1945. Later, however, and as a witness at the trial, he identified the appellant as the civilian who had led him in the alley with the deceased on the evening of March 5. Likewise, the woman who drove into the alley and threw her headlights upon the group in the stair entrance, failed to identify the appellant at first, but later did so and testified at the trial that he was the man whom she had seen at the stair entrance and who had left with the deceased. There was evidence that her reputation for morality was bad and that she had been convicted of operating a house of prostitution. Whether or not these two witnesses were telling the truth on the witness stand was for the jury to decide and, the jury apparently having elected to believe them, we must accept their testimony as true, and the question becomes whether or not, assuming the testimony of the soldier and the woman on the witness stand as true, the evidence is sufficient to sustain the verdict, that is whether or not the jury could reasonably have inferred from the evidence outlined above that the appellant was guilty of murder of the deceased.

A jury must believe beyond a reasonable doubt that the accused committed the crime with which he was charged, and where the evidence is circumstantial, as it was in this case, it must be of so conclusive a character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis of his innocence. However, this rule is for the guidance of trial courts and juries and should be observed by them. It is not for this court. This court has upon it a duty to consider, not to weigh, the evidence in this case for the purpose of determining whether there is any substantial evidence of probative value from which a jury reasonably could have inferred that the appellant was guilty of the offense charged. *Mandich* v. *State* (1946), 224 Ind. 209, 214, 66 N. E. 2d 69; *Dowty* v. *State* (1932), 203 Ind. 228, 235, and cases cited, 179 N. E. 723; *Howard* v. *State* (1923), 193 Ind. 599, 602-3, 141 N. E. 341. In the Dowty case, *supra,* Judge Myers, speaking for the court, used the following language upon this subject:

> ". . . When the sufficiency of circumstantial evidence is in question, as here, we examine it carefully, not for the purpose of finding whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court. *Nelson* v. *State* (1928), 200 Ind. 292, 163 N. E. 95; *Faulkenberg* v. *State* (1926), 197 Ind. 491, 151 N. E. 382; *Henry* v. *State* (1925), 196 Ind. 14, 20, 146 N. E. 822; *Hiner* v. *State* (1925), 196 Ind. 594, 149 N. E. 168; *Falk* v. *State* (1914), 182 Ind. 317, 106 N. E. 354; *Cavender* v. *State* (1890), 126 Ind. 47, 25 N. E. 875."

*Cavender* v. *State* (1890), 126 Ind. 47, 25 N. E. 875, and *Hamilton* v. *State* (1895), 142 Ind. 276, 41 N. E.

588, seem to hold the contrary, i. e. that this court, when considering a case on the sufficiency of the evidence, should determine whether the evidence is of so conclusive a character as to exclude every reasonable hypothesis of guilt. But the Cavender case was disapproved in this respect in *Wrassman* v. *State* (1921), 191 Ind. 399, 402, 132 N. E. 673, and in *Gears* v. *State* (1931), 203 Ind. 380, 394, 180 N. E. 585, and the Hamilton case, *supra,* was overruled in this respect in *Lee* v. *State* (1901), 156 Ind. 541, 549, 60 N. E. 299. The pertinent language of the Wrassman case was as follows:

> ". . . If the language used by Judge Mitchell in the Cavender case was intended to convey the impression that where there are two reasonable hypotheses arising from circumstantial evidence, one of which is innocence and the other guilt, that it is the duty of a court of review to draw the inference of innocence, then this language must be disapproved. If it is meant to be a pronouncement of the law which should govern juries and trial courts, then it is approved."

Other cases which seem to adopt the theory that this court, on appeal, should consider whether the evidence is adequate to overcome every reasonable hypothesis of innocence, and in doing so seem to rely upon the Cavender case, are *Falk* v. *State* (1914), 182 Ind. 317, 106 N. E. 354, *Robinson* v. *State* (1919), 188 Ind. 467, 124 N. E. 489, and *Osbon* v. *State* (1937), 213 Ind. 413, 13 N. E. 2d 223. To the extent that they, and perhaps other cases which we have not specifically pointed out, are inconsistent with the Wrassman and Gears cases, they are subject to the same criticism that the Wrassman case imposed upon the Cavender case and the Lee case imposed upon the Hamilton case.

So even if this court thought that there were two reasonable inferences arising from the circumstantial evidence in this case, one of guilt and the other of innocence, it would not be its duty or right to reverse simply because we might believe the circumstances do not exclude every hypothesis of innocence. *Wrassman* v. *State, supra; Lee* v. *State, supra; Gears* v. *State, supra; Scharillo* v. *State* (1934), 207 Ind. 22, 24, 191 N. E. 76; *Pettit* v. *State* (1935), 207 Ind. 478, 483, 188 N. E. 784; *Finch* v. *State* (1944), 222 Ind. 633, 638, 56 N. E. 2d 851; *Inman* v. *State* (1945), 223 Ind. 500, 504, 62 N. E. 2d 627. That was for the jury to say. It is the jury's function, not ours, to weigh conflicting evidence or uncontradicted evidence from which conflicting inferences may be drawn and determine whether every hypothesis of innocence is excluded. The only question before this court is whether or not there was evidence from which the jury reasonably might have drawn an inference of guilt. As was said in *Lee* v. *State, supra,* at page 546:

"... Where the circumstantial evidence in a case is of such a character that two conflicting inferences may be reasonably drawn therefrom, one favorable to or tending to prove the guilt of the accused, and the other favorable to his innocence, then, under such circumstances, it is not within the province of this court to determine which inference ought to have controlled the jury. The question in such a case manifestly becomes one of fact for the decision of the jury, subject to review by the trial court, and is not, as previously said, open to review on appeal. *American Varnish Co.* v. *Reed,* 154 Ind. 88; *McCaughey* v. *State, ante,* 41."

But there must be some substantial evidence of probative value from which a reasonable inference of guilt may be drawn. The verdict may not be based

upon mere suspicion, possibility, guess or conjecture. *Hiner* v. *State* (1925), 196 Ind. 594, 598, 149 N. E. 168; *Woods* v. *State* (1934), 207 Ind. 235, 238-9, 192 N. E. 257; *Osbon* v. *State, supra; Orey* v. *Mutual Life Ins. Co.* (1939), 215 Ind. 305, 310, 19 N. E. 2d 547; *Prudential Ins. Co. of America* v. *Van Wey* (1945), 223 Ind. 198, 204, 59 N. E. 2d 721.

In the case before us, there was a lapse of four hours between the time the appellant was last seen with the deceased and the time the deceased was found nude and badly injured in a dark alley with her clothing scattered about. It was during these four hours that the offense charged was committed. It was uncontradicted that the locality in which she was found was in a lawless and morally low section of the city of Ft. Wayne. With four hours unaccounted for, and a woman in a helplessly intoxicated condition in a dark alley, in a neighborhood of low type taverns and houses of ill fame, almost anything could have happened. Appellant had the opportunity, but so had hundreds of others. Opportunity is not enough. It is possible that appellant committed the offense charged, but so might many others, and to say that appellant did must be based upon the acceptance of a mere possibility and upon guess and conjecture, in which neither the jury nor we may indulge in rendering or affirming a judgment which sends a man to the penitentiary for the balance of his natural life. It is the opinion of this court that there was no evidence from which it reasonably could be inferred that appellant murdered the deceased.

Having concluded that there is no evidence to sustain the verdict in this case, it is not necessary that we pass upon the questioned instructions or the alleged errors in the admission or exclusion of evidence.

The judgment is reversed, with instructions to grant appellant's motion for a new trial.

Jasper, C. J., not participating.

NOTE.—Reported in 89 N. E. 2d 445.