### SHUTT *v.* STATE OF INDIANA.

[No. 29,113. Filed March 16, 1954.]

*John G. Bunner,* of Evansville, and *Raymond W. Gray,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Robert L. Sheaffer,* Deputy Attorney General, for appellee.

BOBBITT, J.—Appellant was charged by affidavit with the crime of second degree burglary under Acts 1941, ch. 148, §4, p. 447, being §10-701, Burns' 1942 Replacement, tried by the court without the intervention of a jury, found guilty, and sentenced to imprisonment in the Indiana State Prison for a period of not less than 2, nor more than 5 years. From the judgment overruling appellant's motion for a new trial this appeal is prosecuted.

The sole question here presented is the sufficiency of the evidence.

The affidavit charged that "Brank Shutt on or about the 14th day of April A. D. 1953 at said County and State as affiant verily believes did then and there unlawfully, feloniously and burglariously break and enter

into Bud Dietsch's Package Store, owned and operated by Val A. Dietsch, and located at 501 Market Street, Evansville, Vanderburgh County, Indiana, with intent then and there feloniously and burglariously to take, steal and carry away the goods, chattels and personal property of the said Val A. Dietsch, doing business as Bud Dietsch's Package Store."

The evidence here is largely circumstantial and an examination of that most favorable to the state discloses:

(1) That the Bud Dietsch Package Store was broken into between the hours of ten o'clock P. M. on April 14 and nine o'clock A. M. on April 15, 1953, and that the front door window was broken out and three fifths of whisky, which were the property of Val A. Dietsch and of the approximate value of fifteen dollars, were taken; (2) that Dallas Irvin Shutt, a brother of appellant, owned a Chevrolet automobile which he loaned to Ollie Shutt, another brother of appellant, on the night the alleged burglary was committed; (3) the manager of a filling station at Seventh Avenue and Franklin Street testified, on direct examination, that he saw appellant in his brother's car in front of his filling station on April 14th, between 1:30 and 2 o'clock A. M., that the car "pulled away" a short distance and stopped when appellant and another man got out of the car and walked down Seventh Avenue into an alley; that he (witness) then crossed the street and saw "the car come on around the corner and they stopped in the alley and picked the two boys up." This witness further testified as follows:

"Q. Now did you see this defendant any more after you saw him get in that car and drive off that morning?

"A. The next time a couple policemen brought him back to the station.

"Q. You saw him there at your station?

"A. Yes sir, out on the ground, but the car passed there about four or five times after that, after they got in the car.

"Q. You mean the car they got into passed your station four or five times more?

"A. Yes sir.

"Q. And then you later saw this defendant at your station in the custody of the police?

"A. Yes.

"Q. And was that the same man you had seen in the car earlier stopped in front of your station?

"A. Yes.

"Q. And was that the same man you had seen walking down Seventh Avenue earlier?

"A. Yes sir.

"Q. And was that the same man you had seen get into the car and drive away?

"A. Sir I didn't see him get in the car.

By the Court:

"Q. Are you talking about when they picked him up at the alley?

"A. Yes.

"Q. They were out of your sight?

"A. Well it was dark, you couldn't see up that dark street. I seen the car stop and heard a door slam.

"Q. But you had seen them go in the alley?

"A. Yes sir.

Mr. Sandusky:

"Q. Now I will ask you if you know what business place is located in this next block from your station?

"A. Yes sir, there is South Side Swap Shop.

"Q. What is next to that?

"A. Liquor Store, the Blue Bell.

"Q. Do you know who owns that?

"A. No sir I sure don't.

"Q. And that is on Franklin Avenue?

"A. Yes sir.

"Q. Did you see or observe this forty-two black Chevrolet stop in front of that liquor store?

"A. He stopped about thirty feet past the liquor store.

"Q. And is that where the car was stopped when this defendant and another man got out of the car?

"A. Yes sir."

(4) a witness who lived upstairs over the Bud Dietsch Liquor Store testified that he got home from work at about one o'clock A. M. on April 14th and around 1:30 A. M. he "heard somebody kick in the front door [of the liquor store] and the burglar alarm went off," that he got up and looked out the window and saw a car "sitting there with lights on it" with license number EE 1005, and odd looking taillights—(this answered the description of appellant's brother's car). Witness did not see any person or persons around the car or hear anyone talking, but heard the car door slam before it pulled away; and (5) the police came in answer to the burglar alarm and were given the license number of the car by the witness who saw it pull away from the front of the liquor store.

The police, approximately 30 or 40 minutes later, went to the Shutt home at 958 Bond Street where they found the car with the odd taillights still burning and the motor and radiator were still hot. Appellant's father let the police officers into the house where they found appellant and a man by the name of Miller in an upstairs room, "in bed with their clothes on"—blue jeans and white tee shirts. Appellant's brother was in bed downstairs. All three men were arrested and taken immediately to the filling station at Seventh and Franklin Street, where appellant was identified by the station manager.

There must be some substantial evidence of probative value from which a reasonable inference of the guilt of appellant may be drawn; *Todd* v. *State* (1951), 230 Ind. 85, 90, 101 N. E. 2d 922; *Christen* v. *State* (1950), 228 Ind. 30, 39, 89 N. E. 2d 445; and if there is any such evidence to sustain the verdict of the jury or the finding of the trial court, this court will not substitute its judgment for that of either; *Inman* v. *State* (1945), 223 Ind. 500, 503, 62 N. E. 2d 627.

*First:* Appellant asserts that there is no evidence to sustain the finding of the court without basing one inference upon another.

What is actually meant by the statement found in many cases, that an inference cannot be based upon an inference, is that an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility. *Hunt* v. *State* (1939), 216 Ind. 171, 174, 23 N. E. 2d 681; *Hinshaw* v. *State* (1897), 147 Ind. 334, 363, 47 N. E. 157.

It may be true that appellant's guilt must be established by inference drawn from circumstantial evidence. However, these inferences are not based upon uncertain or speculative evidence but upon proven facts which are, under the surrounding circumstances in this case, sufficient to support an inference of guilt.

In *Goodwin* v. *State* (1884), 96 Ind. 550, this court, at page 571, said:

> "Evidence is not to be considered in fragmentary parts and as though each fact or circumstance stood apart from the others, but the entire evidence is to be considered and the weight of testimony to be determined from the whole body of the evidence. A circumstance considered apart from

the other evidence may be weak, if not improbable, but when viewed in connection with surrounding facts and circumstances may be so well supported as to remove all doubt as to its existence as detailed by the witness. Acts considered apart from all other evidence may appear innocent, but when considered with other evidence may import guilt."

See also:

*Hinshaw* v. *State* (1897), 147 Ind. 334, 47 N. E. 157, *supra*.

It was the duty of the trial court here to determine the weight of the testimony from the whole body of the evidence. When all the circumstances surrounding the proven facts are considered as a whole, they constitute evidence of probative value from which the trial court might have reasonably inferred that appellant was guilty of the crime charged.

*Second:* It is asserted that the lack of direct evidence on certain points supports an inference of innocence. It may be that the circumstantial evidence in this case is such that two inferences may reasonably be drawn therefrom, one consistent with innocence, and the other with guilt, but when such is the case, we will treat such evidence as supporting the latter inference in order to sustain the verdict of the jury or the finding of the trial court. *White* v. *State* (1941), 219 Ind. 290, 296, 37 N. E. 2d 937; *Christen* v. *State* (1950), 228 Ind. 30, 39, 89 N. E. 2d 445, *supra*.

For the reasons above stated the judgment of the trial court should be affirmed.

Judgment affirmed.

Draper, C. J., Emmert, Flanagan and Gilkison, JJ., concur.

NOTE.—Reported in 117 N. E. 2d 892.